UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

KAREN TRIBBLE )
)
V. ) NO. 2:10-CV-96
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for disability insurance benefits filed under the Social Security Act was denied by the defendant following a hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 17].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 33 years of age, or a "younger individual" on her disability onset date of January 2, 2007. She has a high school education. Plaintiff has past relevant work experience as follows: pre-school teacher, which is skilled and medium; medical transcriptionist, which is skilled and sedentary; medical records clerk, which is semi-skilled and light; and as a hostess, which is unskilled and medium.

The plaintiff's medical history is set forth in her memorandum brief as follows:

> Dr. Nancy G. Barbarito was Plaintiff's treating physician from March 18, 2003 through May 7, 2007. Conditions and complaints addressed include GERD, depression, thyromegaly, hyperglycemia, goiter, irritability, fatigue, insomnia, seasonal allergies, bipolar disorder, neck pain, dizziness/vertigo, black out episode, amenorrhea, and adult-onset diabetes (Tr. 162-194). On May 29, 2007, Dr. Barbarito reported that she has referred Plaintiff for mental health treatment and has prescribed Seroquel for Plaintiff's mental condition (Tr. 162-163).
> On June 14, 2007, a reviewing state agency psychologist opined Plaintiff is moderately limited by difficulties in maintaining social functioning; is moderately limited by difficulties in maintaining concentration, persistence, and pace; is mildly limited by restriction of activities of daily living; and has experienced one or two episodes of decompensation, each of extended duration (Tr. 195-208). In the attached Mental Residual Functional Capacity Assessment, Dr. Wright opined Plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting (Tr. 209-212).
> Plaintiff received psychiatric treatment by Dr. John Fenley from December 13, 2006 through October 3, 2007, during which time she was diagnosed with cyclothymic disorder. Problems noted during treatment include anxiety, sleep disturbance,

irresponsible spending sprees, anger, depression, and passive suicidal ideation (Tr. 213-217).

From May 4, 2007 through October 19, 2007, Plaintiff underwent counseling with Jennifer Parris, LCSW. Plaintiff presented with ongoing problems with anxiety, depression, bipolar disorder, difficulty functioning, unstable mood, and lack of energy. Plaintiff was noted to be suffering anxiety, panic attacks, worry, depressed mood, irritability, fatigue, mood shifts, distractibility, pressured speech, racing thoughts, mania, depressed appetite, poor coping, feeling overwhelmed, foggy thinking, crying spells, difficulty sleeping, difficulty functioning day to day, difficulty completing chores, and inability to focus (Tr. 218-222).

On November 21, 2007, a reviewing state agency physician opined Plaintiff is moderately limited by difficulties in maintaining social functioning; is moderately limited by difficulties in maintaining concentration, persistence, and pace; is mildly limited by restriction of activities of daily living; and has experienced one or two episodes of decompensation, each of extended duration (Tr. 223-236). In the attached Mental Residual Functional Capacity Assessment, Dr. Williams opined Plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting (Tr. 237-240).[1]

Plaintiff underwent consultative exam by Dr. Steven Lawhon on April 4, 2008. Plaintiff's affect and mood were depressed;' she reported having both depression and mania; she reported overspending her money; her mother stated that her daughter and husband had lost their home due to her overspending; she reported having unfamiliar auditory hallucinations; she admitted to paranoid ideas; she did not complete serial sevens or proverbs; and a thought disorder could not be ruled out. MMPI testing indicated Plaintiff appears to be clinically anxious and depressed; she is worried about her health; histrionic personality traits appear to be present; she appears to be somewhat naïve and may lack insight into her problems; and problems in thinking and social isolation are evident. The diagnoses were bipolar disorder, missed type with psychotic features, and histrionic traits, with a current global assessment of functioning [hereinafter "GAF"] of 58. Dr. Lawhon opined Plaintiff's ability to understand and remember is not significantly limited; her ability to sustain concentration and persistence is moderately limited; her social interaction is not significantly limited; and her work adaptation is

---

[1] In the narrative portion of his assessment, Dr. Williams explained his "summary conclusions" and stated that the plaintiff "could understand and carry simple tasks [*sic*] to lower level detailed tasks while getting along with others and adapting at that level of function. Would not be able to perform more complicated tasks nor deal with public except simple situation." (Tr. 239).

3

mildly to moderately limited (Tr. 241-247).

  Plaintiff continued treatment by Dr. Barbarito from March 3, 2008 through August 20, 2008, for follow-up of diabetes mellitus associated with blurred vision and weakness episodes (Tr. 248-263, 286-292).

  Plaintiff continued counseling with LCSW Parris from November 1, 2007 through March 11, 2008, during which time she as suffering decreased energy/fatigue, limited functioning, crying spells, panic attacks, irritability, marital issues, mood swings, difficulty sleeping, paranoia, mind racing, and depression (Tr. 264-266).

  Plaintiff continued treatment by Dr. Fenley from October 15, 2007 through April 23, 2008, due to sleep disturbance, irritability, labile affect, fatigue, weight loss, depression, and anxiety (Tr. 267-270).

[Doc. 11, pgs. 2-5].

At the administrative hearing, the ALJ called Ms. Cathy Sanders, a Vocational Expert ["VE"]. After she categorized the requirements of her past relevant work, the ALJ first asked her if there were jobs which a person of the plaintiff's age, education and work background could perform if she had the nonexertional limitations opined by Dr. Lawhon, set forth in his report and mental assessment, found at Tr. 241-47. In the medium category she identified 3,200 regional jobs and 400,000 in the nation. (Tr. 38).

He then asked her to assume the plaintiff had the nonexertional limitations set forth by State Agency Psychiatrist Dr. Williams (Tr. 237-40). When asked if there were jobs, Ms. Sanders stated that there would be 2,000 medium jobs in the region and 250,000 in the nation, and 6,000 light jobs in the region and 650,000 in the nation. She also said "If all those symptoms were occurring at the same time all the time it's possible that that would eliminate the jobs at the moderate level." (Tr. 38-39).

In his hearing decision, the ALJ found that the plaintiff had only one severe impairment, bipolar disorder. He found that her diabetes was well controlled and did not interfere with her ability to work. He found that low back pain and pain in her hands and legs

4

had never been diagnosed by a physician and that there was no evidence that these were severe impairments (Tr. 18-19). He found that her impairment did not meet the Listings. (Tr. 19). He found that she had the residual functional capacity for a full range of work at all extertional levels except work involving more than simple tasks and work which involves contact with the public (Tr. 20). He found that she could not return to any of her past relevant work (Tr. 22). Based upon Ms. Sanders' testimony regarding the existence of 2,000 medium regional jobs and 250,000 in the national economy, he found that the plaintiff was not disabled (Tr. 22-23).[2]

Plaintiff asserts that the ALJ's finding of residual functional capacity is not based upon substantial evidence. She maintains that the ALJ did not consider the medical opinions of record, specifically the opinion of State Agency psychologist Wright (Tr. 195-208). While the ALJ mentioned the opinion of State Agency psychiatrist Williams, she argues that he "apparently rejected" the moderate limitations he placed on her in his opinion. She argues also that the ALJ could not rely upon the jobs opined by the VE since Ms. Sanders stated that there would be no jobs for the plaintiff "if all of the symptoms were occurring at the same time" which were set out in Dr. Williams' assessment. Lastly, she states that the ALJ's hypotheticals omitted his own restriction that she have no "work which involves contact with the public" as set out in the hearing decision (Tr. 20).

Dr. Wright's Medical Residual Functional Capacity Assessment form is found at Tr. 209-11). The first portion of this form, section I, is the "Summary Conclusions." Here, he

---

[2] As noted above, Ms. Sanders also identified an even greater number of regional and national jobs at the light level.

stated that the plaintiff was "moderately" limited in the ability to understand and remember detailed instructions; in the ability to carry out detailed instructions; in the ability to maintain attention and concentration for extended periods; in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; in the ability to work in coordination with or proximity to others without being distracted by them; in the ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace; in her ability to interact appropriately with the general public; and to respond appropriately to changes in the work setting. (Tr. 209-10).

Section II of the form was not completed because Dr. Wright did not feel that the existence and severity in any area was "not ratable on available evidence." In section III, the "Functional Capacity Assessment," Dr. Wright was instructed to "explain [his] summary conclusions in narrative form." He stated that, in his opinion, plaintiff could "understand and remember for simple and low level detailed tasks;" would "have some but not substantial difficulty sustaining concentration and persistence for the above tasks;" would "experience some but not substantial difficulty interacting with the public;" and could "adapt to infrequent change." (Tr. 211).

Once again, the ALJ's RFC was that plaintiff could do any work except "work involving more than simple tasks and work which involves contact with the public."

There are two problems with plaintiff's argument. While the ALJ did not specifically mention Dr. Wright's assessment in either his opinion or his question to Ms. Sanders, Dr. Wright's opinion found a similar, if not lesser, degree of limitation than that found by the ALJ and those of Dr. Lanthorn and Dr. Williams, which were presented to the VE as

6

hypotheticals. A moderate limitation means that the limitation is more than slight but that "the individual is still able to function satisfactorily." (Tr. 245). The word "satisfactorily" in this case indicates an ability to perform, perhaps not as easily as a person without the limitation, but an ability to accomplish the task nonetheless.

The second problem with the argument relating to Dr. Wright has to do with a misunderstanding of what his assessment of the plaintiff actually was. The Social Security Program Operations Manual System ["POMS"] states that the summary conclusions, Section I of the assessment form, "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS DI 24510.060, found at secure.ssa.gov/poms.nfs/Inx/0424510060. This directive goes on to state that section III, the Functional Capcity Assessment is "the actual mental RFC...explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." This, section III, is the actual opinion of Dr. Wright regarding the plaintiff's residual functional capacity. Once again, his written findings are not substantially different from the RFC found by the ALJ or presented to the VE. They are by no means more restrictive.

With respect to the ALJ's "apparent rejection" of Dr. Williams' opinion, his Section I findings (Tr. 237-38) are *identical* to those of Dr. Wright. Also, his entire report, Exhibit 7F, was presented to the VE and was the subject of her answer to the second hypothetical. She did state that "if all those symptoms were occurring at the same time that would eliminate the jobs at the moderate level." (Tr. 39). The Court is not sure exactly what Ms. Sanders meant when she referred to the "moderate level". Even if she was inferring that moderate

limitations would preclude the jobs she had identified, it was predicated on all symptoms occurring at the same time, day after day. Dr. Williams did not suggest this. In his section III functional capacity assessment, he stated that the plaintiff "could understand and carry out simple tasks to lower level detailed tasks while getting along with others and adapting at that level of function. Would not be able to perform more complicated tasks nor deal with public except simple situations." (Tr. 239).

Since section III trumps section I, the only fair reading of Ms. Sanders' testimony is that the plaintiff could perform the identified jobs if she were limited to the extent set out in section III.

Finally, plaintiff argues that the questions presented to the VE did not include the ALJ's limitation that plaintiff not do "work which involves contact with the public." Ms. Sanders' answer to the second hypothetical, which was based on Dr. Williams' assessment, specifically excluded "any [jobs] that had anything to do with the public." (Tr. 39). There are few if any jobs outside of the home in which "the public" is not encountered at some point. The point the ALJ and Dr. Williams were making is that the plaintiff should not do work where she interacts with the public as part of her job responsibilities. Those types of jobs were excluded by the VE.

The Court is of the opinion that substantial evidence exists to support the ALJ's findings regarding the plaintiff's residual functional capacity and for his finding based upon Ms. Sanders' testimony that a significant number of jobs exist which the plaintiff could perform. He did not commit any legal error. Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be DENIED and the defendant

8

Commissioner's Motion for Summary Judgment [Doc. 17] be GRANTED.[3]

Respectfully submitted:

  s/ Dennis H. Inman
 United States Magistrate Judge

---

[3]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).